713 S.E.2d 264

**In the Matter of Irby Ezell WALKER, Jr., Respondent.**

**No. 27000.**

Supreme Court of South Carolina.

Submitted June 14, 2011.

Decided July 11, 2011.

306

Lesley M. Coggiola, Disciplinary Counsel, and Sabrina C. Todd, Assistant Disciplinary Counsel, both of Columbia, for Office of Disciplinary Counsel.

George Hunter McMaster, of Tompkins and McMaster, LLP, of Columbia, for respondent.

PER CURIAM.

In this attorney disciplinary matter, the Office of Disciplinary Counsel (ODC) and respondent have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RLDE, Rule 413, SCACR. In the Agreement, respondent admits misconduct and consents to disbarment pursuant to Rule 7(b), RLDE, Rule 413, SCACR. He requests the disbarment be imposed retroactively to the date of his interim suspension, September 18, 2009. *In the Matter of Walker,* 384 S.C. 536, 683 S.E.2d 476 (2009). In addition, respondent agrees not to seek reinstatement until he has fully completed his criminal sentence, fully paid restitution to the parties

affected by the misappropriation of funds from his trust accounts, fully reimbursed the Lawyers' Fund for Client Protection, and satisfied all judgments against him arising from the practice of law. Respondent further agrees to reimburse ODC and the Commission on Lawyer Conduct (the Commission) for costs incurred in the investigation and prosecution of this matter once he has completed the active term of his prison sentence.

We accept the Agreement and disbar respondent from the practice of law in this state with the conditions set forth in the Agreement. The disbarment shall be retroactive to the date of respondent's interim suspension. The facts, as set forth in the Agreement, are as follows.

## FACTS

### Matter I

Respondent represented a client in a dispute with a carpenter. Respondent failed to competently perform some tasks on the client's behalf, failed to diligently work on her case, and failed to adequately communicate with the client. In addition, respondent submitted his initial response only after receiving ODC's reminder letter pursuant to *In the Matter of Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982).

### Matter II

Respondent conducted a real estate closing. The funds to be disbursed included a loan payoff of $105,600. Respondent failed to submit a timely payoff. For more than six (6) months, respondent was unaware of this problem because he was not properly reconciling his real estate trust accounts or adequately supervising his staff. The payoff was ultimately made, but additional interest of $5,483.57 accrued during the delay. Respondent admitted he was responsible for the delay and agreed to reimburse the seller for the additional interest, but failed to so. Respondent later self-reported to ODC that Jessamine Johnson, his sole real estate paralegal and the member of his staff who managed his real estate trust accounts, had been stealing money from his trust accounts.

Respondent admits he did not maintain accurate and complete trust account records as required by Rule 417, SCACR.

Accordingly, the full extent of Ms. Johnson's misappropriation is unknown. However, from May 2006 through December 2008, Ms. Johnson made approximately $145,550 in payments on her American Express account by wiring funds from one of respondent's real estate trust accounts to the company. Further, from September 2008 through February 2009, she wired approximately $11,600 from another real estate trust account to her husband's business, Crescent Development, LLC. Ms. Johnson also issued checks to herself, her husband, and her husband's business totaling $36,350.67 from respondent's real estate trust accounts.

Because the slowdown in the real estate market resulted in small balances in respondent's real estate trust accounts, Ms. Johnson eventually began to misappropriate funds to conceal her prior thefts. In addition to the payoff discussed in Matter I, Ms. Johnson failed to submit payoffs in four other closings totaling approximately $250,000. In April 2009, she wired $100,000 from respondent's litigation trust account to one of his real estate trust accounts, and then wrote two checks totaling $40,100 from that real estate trust account to the other real estate trust account.

Although it appears Ms. Johnson also altered bank statements to hide her activities, respondent's failure to adequately maintain his trust account and properly supervise his staff led to a significant delay in the discovery of Ms. Johnson's theft, and thus prolonged the period of time she had access to client funds. Respondent reported Ms. Johnson and her husband, who allegedly assisted in the theft, to law enforcement. Although the exact figure is not available, Ms. Johnson and her family have paid some restitution.

### Matter III

In August 2010, respondent pled guilty to solicitation of a felony. Specifically, respondent admitted attempting to hire a "hit man" to murder another member of the South Carolina Bar. Respondent paid the "hit man" in part with a post-dated check because he did not have sufficient funds in his account to pay the check's face value. Respondent was sentenced to ten (10) years imprisonment, suspended upon service of three (3) years imprisonment and five years of probation.

## Matter IV

Complainant, the attorney respondent attempted to have murdered, represented the wife in a domestic matter. Respondent represented the husband. After being relieved from the case, respondent went with the husband to the wife's home and convinced her to fire Complainant and reach an agreement with the husband. Respondent told the wife not to tell anyone about the visit. Respondent prepared a quit claim deed for the husband to sign as part of the settlement he was proposing.

## Matter V

Respondent agreed to represent a client in a personal injury case on a contingency fee basis. Respondent never filed suit and did not adequately communicate his decision with the client. The statute of limitations expired and, almost three years after accepting the case, respondent wrote "Close—We did not pursue" on the client's file.

## Matter VI

A client hired respondent to represent him in a personal injury case arising from an automobile accident. Respondent did not work diligently on the case. When the client came to respondent in need of money, respondent guaranteed an $8,000 bank loan for the client. Respondent promised the client he would quickly settle the case and pay off the loan, but failed to do so. The note was renewed multiple times and respondent paid interest on the loan on at least one occasion.

## Matter VII

In August 2009, respondent accepted a $4,000 retainer from a husband and wife to represent them in a foreclosure matter. Respondent had not earned his fee upon receipt of the retainer and did not deposit the retainer into his trust account. Instead, respondent endorsed the check and gave it to a third person who endorsed and negotiated the check.

## Matter VIII

On or about December 5, 2008, respondent accepted a $2,000 retainer to pursue a divorce on behalf of a seriously ill man who believed his wife was poisoning him. The client

wanted the action filed immediately and for respondent to seek an expedited hearing as well as an expedited divorce on the ground of habitual drunkenness. The client died on December 13, 2008, before respondent had filed a domestic action or otherwise performed work on his case. Respondent did not refund any portion of the retainer.

## LAW

Respondent admits that, by his misconduct, he has violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (lawyer shall provide competent representation to a client); Rule 1.2 (lawyer shall abide by client's decisions concerning objectives of representation and consult with client as to means by which they are pursued); Rule 1.3 (lawyer shall act with reasonable diligence and promptness in representing a client); Rule 1.4 (lawyer shall keep client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); Rule 1.5(a) (lawyer shall not make agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses); Rule 1.8(e) (lawyer shall not provide financial assistance to client in connection with pending or contemplated litigation); Rule 1.8(i) (lawyer shall not acquire proprietary interest in cause of action or subject matter of litigation the lawyer is conducting for client); Rule 1.15 (lawyer shall safeguard client funds); Rule 1.15(c) (lawyer shall deposit into client trust account unearned legal fees and expenses that have been paid in advance, to be withdrawn by the lawyer only as fees are earned or expenses incurred); Rule 4.2 (lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter unless the lawyer has the consent of the other lawyer or is authorized to do so by law or court order); Rule 5.3 (lawyer who possesses managerial authority in law firm shall make reasonable efforts to ensure that firm has in effect measures giving reasonable assurance that non-lawyer employee's conduct is compatible with the professional obligations of lawyer; lawyer having direct supervisory authority over non-lawyer shall make reasonable efforts to ensure that non-lawyer's conduct is compatible with the professional obligations of lawyer); Rule 8.1(b)

(lawyer shall not knowingly fail to respond to lawful demand for information from disciplinary authority); Rule 8.4(a) (it is professional misconduct for lawyer to violate the Rules of Professional Conduct); Rule 8.4(b) (it is professional misconduct for lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects); Rule 8.4(c) (it is professional misconduct for lawyer to commit a criminal act involving moral turpitude); and Rule 8.4(e) (it is professional misconduct for lawyer to engage in conduct that is prejudicial to the administration of justice). In addition, respondent admits he violated the recordkeeping provisions of Rule 417, SCACR.

Respondent further admits his misconduct is grounds for discipline under Rule 7, RLDE, of Rule 413, SCACR, specifically Rule 7(a)(1) (it shall be ground for discipline for lawyer to violate Rules of Professional Conduct), Rule 7(a)(3) (it shall be ground for discipline for lawyer to knowingly fail to respond to a lawful demand for response from disciplinary authority), Rule 7(a)(5) (it shall be ground for discipline for lawyer to engage in conduct tending to pollute the administration of justice or to bring the courts or the legal profession into disrepute or conduct demonstrating an unfitness to practice law), and Rule 7(a)(6) (it shall be ground for discipline for lawyer to violate the oath of office taken to practice law in this state and contained in Rule 402(k), SCACR).

### CONCLUSION

We accept the Agreement for Discipline by Consent and disbar respondent retroactively to September 18, 2009, the date of his interim suspension. Respondent shall not file a petition for reinstatement until he has fully completed his criminal sentence, fully paid restitution to the parties affected by the misappropriation of funds from his trust accounts, fully reimbursed the Lawyers' Fund for Client Protection, and satisfied all judgments against him arising from the practice of law. Once he has completed the active term of his prison sentence, respondent shall make arrangements to fully reimburse ODC and the Commission for costs incurred in the investigation and prosecution of this matter.

Within fifteen (15) days of the date of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30 of Rule 413, SCACR, and shall also surrender his Certificate of Admission to the Practice of Law to the Clerk of Court.

**DISBARRED.**

TOAL, C.J., PLEICONES, BEATTY and KITTREDGE, JJ., concur. HEARN, J., not participating.